L.C. WESTERVELT, Margaret Fox, Joe Dan Trigg, Attorney–in–Fact and Trustee for Lillian Guild, Marilyn Guild, Ramah Lee Jones, Janice Trigg, and Guild Family Trust, Barbara Killen, Patricia Kunc, Jacqueline Medley, Paul Fennessey, Carolyn Sue Stinson, R.D. Jones, Inc., and their unknown spouses, grantees, representatives, successors, heirs, and devisees, Appellants–Respondents,

v.

George WOODCOCK III, d/b/a West Drilling Company, Appellee–Petitioner.

No. 65A01–1311–PL–501.

Court of Appeals of Indiana.

Aug. 11, 2014.

---

Stephen T. Link, Evansville, IN, Attorney for Carolyn Sue Stinson.

John E. Rhine, Rhine Ernest LLP, Evansville, IN, Attorney for Proposed Amicus Curiae Indiana Coal Council, Inc.

William C. Illingworth, Chad J. Sullivan, Matthew J. Latowski, Jackson Kelly PLLC, Evansville, IN, Attorneys for Amicus Curiae Indiana Oil and Gas Association.

Marc E. Hawley Mount Vernon, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

■ Carolyn Sue Stinson appeals a summary judgment that determined her mineral interest had lapsed. As she paid taxes on it, there was no lapse. We therefore reverse and remand.[1]

---

1. In his Appellee's Brief, Woodcock asserts we need not reach the question whether Stinson's mineral interest lapsed because the correction deed under which she claims an interest is not valid and the mineral interest provided in the original deed therefore terminated in 1970. As Woodcock has provided no legal authority to support that allegation of error, we do not address it.

An appellate argument must contain the contentions on the issues presented, supported by cogent reasoning, and each contention must be supported by citations to the authorities, statutes, and the appendix or parts of the record relied on. Ind. Appellate Rule 46(A)(8)(a), 46(B); *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1027 (Ind.Ct.App. 2005), *trans. denied.* A party waives any issue for which it fails to provide argument and authority. *Watson*, 822 N.E.2d at 1027. Because Woodcock's assertion is not supported by citation to authority, we decline to address it on appeal. *See, e.g., Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1037 (Ind.Ct.App. 2005), *reh'g denied.*

## FACTS AND PROCEDURAL HISTORY ·

In August 2009, the Kathleen A. Briggs Trust filed a quiet title action to a mineral interest in Posey County. The Trust already owned the surface and seven-eighths of the minerals. Stinson was the only remaining defendant after the others settled or were defaulted. In 2010, the Trust and Stinson both moved for summary judgment. George Woodcock III was substituted for the Trust as plaintiff while those motions were pending.

A 1958 deed conveyed to Stinson's predecessor mineral rights for a term of thirty years from the date of a 1940 deed "and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated therefor." (Appellee's App. at 2.) The deed noted it did not convey any additional interest, but "corrects said former deed as to the term." (*Id.*)

There has been continuous production of oil from the land covered by Stinson's mineral deed, and Stinson has paid all real estate taxes that have been assessed. Exhibits before the trial court included copies of Posey County tax statements captioned "Real Estate Tax Statement," (Appellant's App. at 58), and "Oil Property Tax Statement." (*Id.* at 60.) The latter statements indicated they were "Approved by the State Board of Accounts for Posey County." (*Id.*)

## DISCUSSION AND DECISION

When a grant or denial of summary judgment is challenged on appeal, the procedure and standard under Indiana law is clear. Our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind.2013). The moving party bears the initial burden to make a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing there is a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged summary judgment ruling is limited to the designated evidence before the trial court, *see* Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.* We reverse if the law has been incorrectly applied to the facts; otherwise, we may affirm a summary judgment on any theory supported by evidence in the record. *Id.* We are not limited to reviewing the trial court's reasons for granting or denying summary judgment, but rather we may affirm a grant of summary judgment on any theory supported by the evidence. *Id.*

At common law, an owner of a mineral interest did not lose it by nonuse, abandonment, or cessation in working the mine. *Consolidation Coal Co. v. Mutchman*, 565 N.E.2d 1074, 1080 (Ind.Ct.App.1990), *trans. denied.* The legislature altered that rule by enactment of the Dormant Mineral Act, which extinguishes mineral rights that have not been "used" for the statutory period.

An interest in coal, oil and gas, and other minerals, if unused for a period of twenty (20) years, is extinguished and the ownership reverts to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved. However, if a statement of claim is filed in accordance with this chapter, the reversion does not occur.

Ind.Code § 32–23–10–2. A mineral interest is "used" for purpose of that statute when "taxes are paid on the mineral interest by the owner of the mineral interest." Ind.Code § 32–23–10–3(a)(6).[2]

■■■ Stinson's mineral interest did not lapse, because she paid taxes on it, and summary judgment for Woodcock was therefore error.[3] It is not disputed that Stinson paid taxes on her mineral interest, and the trial court so noted: "Stinson was assessed and has paid oil taxes on [the mineral interest] each and every year she has owned such minerals." (Appellant's App. at 13.) It further found she paid "*ad valorem*[4] oil taxes on the royalties she received but no real estate taxes on the ownership of the mineral interest. (*Id.* at 12) (footnote added). The trial court went on to find, however, that "any taxes paid by Carolyn Stinson on the royalties received have never appeared in any public record and could not be found by a title search." (*Id.* at 15.) Under the facts before us, we hold Stinson's payment of taxes prevented the lapse of her mineral interest.

We note initially that the term "oil or gas interest" includes royalties. Ind.Code § 6–1.1–4–12.4(a). An oil or gas interest is subject to assessment and taxation as real property, and each oil or gas interest "shall be assessed annually by the assessor of the township in which the oil or gas is located, or the county assessor if there is no township assessor for the township." Ind.Code § 6–1.1–4–12.4(b).

The parties direct us to no Indiana decisions that address whether payment of *ad valorem* oil taxes prevents lapse of a mineral interest. But the Georgia Supreme Court recently held in *Cartersville Ranch, LLC v. Dellinger,* 295 Ga. 195, 758 S.E.2d 781 (2014), that a mineral rights owner could not be divested of his ownership pursuant to Georgia's mineral lapse statute when he, like Stinson in the case before us, had paid the *ad valorem* taxes assessed on his mineral rights. Cartersville Ranch admitted that Dellinger had for many years personally paid the *ad valorem* taxes on the mineral rights at issue, but it asserted it was entitled to gain title to these rights via the mineral lapse statute because Dellinger did not file a tax return on these rights and did not correct errors in the county's tax records. The Court held because Dellinger actually paid *ad valorem* taxes on all the mineral rights in question, he was entitled to summary judgment. *Id.* at 202–03, 758 S.E.2d 781.

Woodcock argues Stinson's mineral interest lapsed because her tax payments were for *ad valorem* taxes assessed on royalties, and they do not appear in the public record. We decline in this case to read that restriction into the statute, which says only that a mineral interest is used, and lapse is therefore prevented, when "*taxes are paid* on the mineral interest by the owner of the mineral interest." Ind. Code § 32–23–10–3(a)(6).

Woodcock relies on *Miller v. Weber,* 839 N.E.2d 204 (Ind.Ct.App.2005), *trans de-*

---

**2.** As the concurring opinion correctly notes, a mineral interest may also be used when "minerals are produced under the mineral interest." Ind.Code § 32–23–10–3(a)(1). As explained below, Stinson's mineral interest was "used" by virtue of her payment of taxes on it. We therefore need not address whether the production of minerals amounted to use.

**3.** Because we so hold, we need not address whether, as Woodcock contends, use by a lessee cannot prevent lapse of the lessor's mineral interest.

**4.** An *ad valorem* tax is a tax levied on property or an article of commerce in proportion to its value as determined by assessment or appraisal. *Airlines Parking, Inc. v. Wayne Cnty.,* 452 Mich. 527, 550 N.W.2d 490, 494 (1996).

*nied,* where Weber contended her payment of capital gains taxes satisfied section 3(a)(6). We noted the purposes of the Dormant Mineral Act are to remedy uncertainties in titles and to facilitate the exploitation of valuable mineral resources. *Id.* at 209. Weber maintained the payment of capital gains taxes furthered a purpose of the mineral lapse statute by promoting the exploitation of mineral interests. We agreed the royalties paid under the lease facilitated the exploitation of the mineral interests, "but that is not enough. A public record is required to ensure that interest is advanced. Without a public record of an owner's tax payments on a mineral interest, there is no way to track whether that interest is, in fact, active or dormant as contemplated under the Act." *Id.* at 211.

In *Miller,* the payment of capital gains taxes did not create a public record of ownership of the mineral interest because capital gains taxes are not recorded in any public document; instead, capital gains tax payments are found on the recipient's income tax returns, which are not public records. *Id.* The payment of capital gains taxes on royalties thus does not appear in the chain of title and does nothing to remedy uncertainties in titles to mineral interests. *Id.* Therefore, payment of capital gains taxes on royalties paid under a mineral lease was not a "use" under Section 3(a)(6) of the Act. *Id.*

The *ad valorem* taxes Stinson paid, by contrast, were, or should have been, recorded in public documents.[5] An *ad valorem* tax is a property tax that taxes the value of the mineral produced. *Wyoming State Tax Comm'n v. BHP Petroleum Co. Inc.,* 856 P.2d 428, 434 (Wyo.1993). In an affidavit, the Posey County Assessor stated her office determines the assessed valuation of each oil or gas interest for each owner, and "[t]he assessed valuation of each owners' oil or gas interest is not confidential, but is a public record."[6] (Appellant's App. at 67.)

**5.** The *Miller* court reviewed the relevant statutes applicable to the mineral interest before it:

When Laros' mineral interest was created, the Indiana Code provided that a severed mineral interest was "real property," *see* Ind.Code § 6–1–20–4 (repealed 1975), and that "real property" was "tangible property," Ind.Code § 6–1–20–6 (repealed 1975). The code further provided that "all tangible property within the jurisdiction of this state on the assessment date shall be subject to assessment and taxation," Ind.Code § 6–1–21–1 (repealed 1975), and directed the county auditor to keep a transfer book, arranged by townships, cities and towns, in which he was to enter a description, for the purpose of taxation, of all lands that had been conveyed by deed or partition, which record was to include the names of the parties to the conveyance, Ind.Code § 6–1–27–8 (repealed 1975). Thus, in 1974, the Indiana Code defined mineral interests as real property subject to taxation and required that the county auditor keep a record of such interests.

*Miller v. Weber,* 839 N.E.2d 204, 210–11 (Ind. Ct.App.2005). The *Miller* court noted these statutory provisions were recodified but they "remain substantially unchanged today." *Id.* at 211 n. 6.

**6.** In an affidavit dated July 25, 2013, the Assessor stated her office administers the *ad valorem* oil tax in Posey County and the dollar amount on which the tax is imposed is reported to her office. But she went on to say the only mineral interests that are assessed and for which ownership records are kept for the purpose of real estate taxation are separate coal interests.

In a subsequent affidavit dated October 29, 2013, the Auditor said "I have prepared this affidavit to clarify my earlier affidavit dated July 25, 2013 regarding the distinction between what information is confidential and what is a public record. The records of the assessed valuation of an oil or gas interest are a public record." (Appellant's App. at 67.)

The Auditor's clarifying affidavit was submitted to the trial court after the September 23, 2013, entry of summary judgment for

Woodcock asserts, without citation to authority, the tax statutes "authorize" counties to "keep track of and tax mineral interests in the same way that other real estate is tracked and taxed," (Appellee's Br. at 8), but then he says "[a] county *could* do this but Posey County *does not* do this (except for separate coal interests). Posey County does not keep track of mineral ownership.... There is no chain of title information." (*Id.* at 9.) (Emphasis in original.)

As noted, it is apparent from Stinson's tax statements that the County did, at least to some extent, "keep track of mineral ownership"—it assessed taxes on Stinson's interest and generated tax statements[7] that it sent to her, which statements included legal descriptions and well numbers. That would presumably serve as the type of "chain of title information" Woodcock asserts does not exist in Posey County.[8] As the *Miller* court explained, the county was obliged to generate and keep such information, because the legislature defined mineral interests as real property subject to taxation and required that the county auditor keep a record of such interests. 839 N.E.2d at 210–211. The tax statements indicate the County complied with those mandates. But even if Woodcock is correct that the County's records do not include all the information

they should, we decline to hold Stinson may be divested of her mineral rights solely by virtue of the Posey County Auditor's recordkeeping procedures.

## CONCLUSION

Stinson's mineral interest did not lapse, because she paid taxes on it. We accordingly reverse summary judgment for Woodcock and remand so the trial court may enter summary judgment for Stinson.

Reversed and remanded.

KIRSCH, J., concurs.

BAILEY, J., concurs in result with separate opinion.

BAILEY, Judge, concurring in result.

The majority in this case concludes that Stinson paid *ad valorem* taxes on royalties she received from her mineral interest in land, and the payment of these taxes had the effect of tolling the Dormant Mineral Act's ("the Act") twenty-year period requiring reversion of an unused mineral interest. The majority accordingly reverses the trial court's decision finding that Stinson's interest had reverted to Woodcock. While I agree with the majority's result, I disagree with the majority's construction and application of the Act. I

Woodcock, as part of Stinson's October 31, 2013, Motion to Reconsider and for Relief from Judgment. The Chronological Case Summary reflects the motion was denied. Neither party on appeal addresses the significance *vel non* of that clarifying affidavit or its submission after entry of the summary judgment. In fact, neither party even acknowledges there was a motion to reconsider and for relief from judgment.

7. As noted above, evidence before the trial court included copies of Posey County tax statements captioned "Real Estate Tax Statement." (Appellant's App. at 58.) The "Real Estate Tax" statements do not explicitly refer to *"ad valorem* oil taxes"—they instead list

parcel numbers and include references to well numbers, *i.e.,* "well # 568" and "well # 610." (*Id.*)

8. A complete title search is not confined to the records of the county recorder. Although actual practice may vary from county to county, an abstractor or title insurance agent will routinely examine records affecting title to real estate in the offices of the recorder, auditor, assessor, treasurer, sheriff and clerk of the courts in the county where the real estate is located. *WorldCom Network Servs., Inc. v. Thompson,* 698 N.E.2d 1233, 1241 (Ind.Ct. App.1998), *trans. denied.*

write separately to explain my disagreement with the majority's rationale.

The majority observes that the Dormant Mineral Act extinguishes "[a]n interest in coal, oil and gas, and other minerals, if *unused* for a period of twenty (20) years," with the effect that the interest "reverts to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved." Ind.Code § 32–23–10–2 (emphasis added). The reversion does not occur if a statement of claim, the requirements for which are set forth in the Act, is filed. *Id.*

Further, the twenty-year period set forth in the Act may be tolled through use.

A mineral interest is considered to be used when:

(1) minerals are produced under the mineral interest;

(2) operations are conducted on the mineral interest for injection, withdrawal, storage, or disposal of water, gas, or other fluid substances;

(3) rentals or royalties are paid by the owner of the mineral interest for the purpose of delaying or enjoying the use or exercise of the rights;

(4) a use described in subdivisions 1 through 3 is carried out on a tract with which the mineral interest may be unitized or pooled for production purposes;

(5) in the case of coal or other solid minerals, there is production from a common vein or seam by the owners of the mineral interest; or

(6) taxes are paid on the mineral interest by the owner of the mineral interest.

I.C. § 32–23–10–3(a); *Miller v. Weber,* 839 N.E.2d 204, 208 (Ind.Ct.App.2005) (characterizing the six circumstances of use as tolling the twenty-year period of I.C. § 32–23–10–2), *trans. denied.*

Here, the majority concludes that Subsection 32–23–10–3(a)(6)–payment of taxes upon the mineral interest by the interest's owner—operated to put Stinson's mineral interest in use as that term is understood within the Act. In doing so, the majority relies heavily upon distinguishing its reasoning from that of this Court's prior decision in *Miller, supra.* Most notably, the majority observes that in *Miller* the capital gains taxes paid on royalties were not a matter of public record sufficient "to remedy uncertainties in titles to mineral interests," Op. at 79 (citing *Miller,* 839 N.E.2d at 211), whereas Stinson's payment of *ad valorem* taxes in this case "were, or should have been, recorded in public documents." *Id.*

As the *Miller* Court observed, the payment of public-record taxes can be sufficient to resolve uncertainties in a mineral interest. But, in my opinion, we need not reach the issue in this case of whether payment of the *ad valorem* tax satisfies that requirement, because a more important distinction exists between this case and the facts of *Miller.* In *Miller,* the mineral rights went unused for any active exploration or recovery of minerals, oil and gas, or other sub-surface resources covered by the mineral interest at issue. *Id.* at 206. In the present matter, however, oil continued to be produced from the land associated with Stinson's mineral interest. That is, the mineral interest was in use in the plainest manner possible: minerals were produced from sub-surface deposits that were the subject of Stinson's mineral interest. I.C. § 32–23–10–3(a)(1).

By its plain language, Subsection 3(a)(1) requires only that a mineral interest be productive. This is unlike Subsection (a)(3), which tolls the twenty year statutory period only when royalties are paid directly by the mineral interest holder to the grantor of that interest. *See Miller,* 839 N.E.2d at 208–09 (rejecting a claim under I.C. § 32–23–10–3(a)(3) that the

statutory period was tolled by payment of royalties to a mineral interest holder by a third-party grantee of the holder). In this case, then, I would construe Subsection 3(a)(1) such that it was satisfied by the continued production of minerals—whether or not Stinson personally conducted that activity.

This construction is clearly within the plain language of the Act, which distinguishes between the requirements for tolling in cases of actual production or extraction of resources (in which case the legislature's concern for productivity is satisfied), see I.C. § 32–23–10–3(a)(1), and cases in which there has been no production and no payment of royalties to toll the twenty-year period as to the unproductive interest. *See* I.C. § 32–23–10–3(a)(3). It serves our legislature's purpose in derogating from the common law by limiting the duration of economically unproductive mineral interests to a twenty-year reversion period, which helps to ensure the marketability and productivity of land with sub-surface coal, oil and gas, and other mineral deposits. *Short v. Texaco, Inc.*, 273 Ind. 518, 526, 527–28, 406 N.E.2d 625, 629, 630 (1980), *aff'd, Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). This construction also recognizes the separability and transferability of portions of a mineral interest. *See id.* at 528, 406 N.E.2d 625 (observing that various interests may need to be "assemble[d]" to "actually produce minerals"); *Miller*, 839 N.E.2d at 207–209 (addressing the dependence of a third party's interest upon that of an original grantee).

Finally, applying the plain language of Subsection (a)(1) obviates the kind of inquiry otherwise required by the majority's opinion. The focus of that inquiry is whether and how taxes were paid and recorded with a county office—a subject that may not be appropriate for summary judgment here, given the apparent factual dispute over the recording of Stinson's *ad valorem* tax payments. If the mineral interest is productive during the tolling period, Subsection (a)(1) is met, the reversion period is tolled, and there is no need for further inquiry because both the plain language and the legislative purposes of the Act have been met. I think that is the case here.

I therefore respectfully concur in the result.